JOHN P. KELLY *vs.* WILLIAM H. DILL, impleaded, etc.

March 22, 1877.

**Homestead Requires Residence.**—To constitute a homestead, the residence or dwelling of the party claiming it must be, or must have been, situated on the land claimed.

**Same—Attachment Prior to Residence.**—The owner cannot, by making the land his homestead, defeat the lien of an attachment previously levied.

This action was brought on March 25, 1876, in the district court for Winona county, against William H. Dill, Felix Brennan, J. F. Tourtelotte, Edward Gilmore, and Margaret Gilmore, his wife. In his complaint the plaintiff alleges the following facts: Defendant Gilmore is a resident of Winona county, and for ten years last past has been, and now is, a married man and the head of a family, and on October 29,

1874, was the owner of the east half of the south-east quarter of section 3, in township 105 north, of range 6 west, in said county. Shortly before October 29, 1874, Gilmore purchased said land, intending to make it his homestead. Neither at the date of the purchase, nor at any time since, has he owned any other land or homestead. On October 29, 1874, and before he was aware that the defendant Brennan was about to bring suit against him, Gilmore had begun to make arrangements for moving upon said land, and living thereon as his homestead; the reason why he did not sooner move upon the land being that the same was let to a tenant, whose term had not expired, and who refused to surrender possession.

On October 29, 1874, the defendant Brennan brought suit against Gilmore, and caused a writ of attachment to be issued therein, under which, on October 31, 1874, Dill, sheriff of the county, attached the said land. On January 2, 1875, a judgment was rendered and docketed in that action, in favor of Brennan and against Gilmore, for $183.70. Between October 31, 1874, and January 2, 1875, Gilmore, with his family, moved upon said land, and into a dwelling-house thereon, belonging to him, which he has since occupied with his family as his homestead, pursuant to his previous arrangements and his intention when he purchased the land. On January 2, 1875, an execution issued on said judgment, by virtue of which the defendant Dill, as sheriff, levied on the land, and on March 20, 1875, sold it to Brennan for $209.23, executing the proper certificate of sale, which was recorded on March 27, 1875, and was, on December 27, 1875, assigned by Brennan to the defendant Tourtelotte, which assignment was duly recorded.

On December 14, 1875, Gilmore and wife mortgaged said land to plaintiff, to secure the sum of $570.52, which mortgage was duly recorded.

Plaintiff further alleges that Brennan and Tourtelotte claim that the land was subject to the lien of the judgment,

and that said land, unless redeemed, would have become the absolute property of the latter; and that Gilmore claims that the land was, as his homestead, exempt from the lien of the judgment, and that the levy and sale were wholly void, and that he will not repay the plaintiff the money paid by him on redemption from the execution sale; that the plaintiff, on March 24, 1876, redeemed said land from the execution sale, by paying to the defendant Dill, as sheriff, under protest, the sum of $224.15, which sum is still in his hands, but which he threatens to, and will, unless restrained, pay over to Tourtelotte.

Plaintiff further alleges that, before the redemption, the certificate of sale was a cloud on Gilmore's title to the land, and that, unless he had redeemed, such certificate would *prima facie* have rendered his mortgage valueless.

The relief prayed is that the judgment of Brennan may be adjudged to have been a lien on the land, and the execution sale a valid sale; or that it be adjudged that the land was Gilmore's homestead, that the judgment was not a lien, and that the execution sale was unauthorized by law; and, in the latter event, that the defendant Dill repay to plaintiff the sum paid by him on redemption, and be restrained, *pendente lite*, from paying the same over to Tourtelotte.

A general demurrer to the complaint, interposed by defendant Dill, was sustained by *Mitchell*, J., and the plaintiff appealed.

*Wilson & Taylor*, for appellant.

*O. B. Gould* and *Lloyd Barber*, for respondents.

GILFILLAN, C. J. This court decided, in *Kresin* v. *Mau*, 15 Minn. 116, that, to constitute a homestead, the residence or dwelling of the party claiming it must be, or must have been, situated on the land claimed. In this case Gilmore's residence or dwelling had, at the time of levying the attachment, never been situated on the land. He had merely intended to make the land his homestead, and had purchased it for that purpose. It was, therefore, not his homestead when the attachment was levied.

The only question remaining is, can the owner defeat the lien of an attachment previously levied, by moving upon the land and making it his homestead?

To sustain the affirmative the plaintiff relies on Const. art. 1, § 12 ; Gen. St. c. 68, and Laws 1865, c. 58.   Section 12, art. 1, of the constitution provides that "a reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability ; the amount of such exemption shall be determined by law."   This does not determine the amount or character of the property to be exempted, nor how it shall be ascertained or designated. No property could be claimed as exempt under it until the legislature should determine to what property, and to what amount, the exemption should extend.   When *determined by law*, the exemption comes under the constitutional protection.

Gen. St. c. 68, § 1, provides that "a homestead, consisting of any quantity of land not exceeding eighty acres, and the dwelling-house thereon, and its appurtenances, to be selected by the owner thereof, and not included in any incorporated town, city, or village ; or, instead thereof, at the option of the owner, a quantity of land not exceeding in amount one lot, being within an incorporated town, city, or village, and the dwelling-house thereon, with its appurtenances, owned and occupied by any resident of this state, shall not be subject to attachment, levy, or sale upon execution, or any other process issuing out of any court within this state."   The act of 1860, (Laws 1860, c. 95 ; Gen. St. p. 499,) as amended by the act of 1868, (Laws 1868, c. 58,) merely enables the owner to remove from his homestead without losing the benefit of his exemption.   By this section of the general statutes the legislature, pursuant to the constitutional provision, points out one particular kind of property, and the amount of it, that is to be exempt from seizure or sale.   This kind is a homestead, consisting of land not exceeding the prescribed amount, with the dwelling-house thereon, owned and occupied by the debtor.

There is no exemption until it is such homestead, and is so occupied. Until that time it stands as any other property, and may be seized for the debts of the owner.

The proposition that property may be seized, attached, or levied upon, to answer the debts of the owners, includes the further proposition that such seizure, attachment, or levy may be made effectual by a sale, or any subsequent acts necessary for that purpose. The liability to seizure implies the liability to sale. The right to sell is fixed by the seizure. Such right is, from the time the lien attaches by the seizure, a vested right and property. In this respect there is no difference between a lien secured by a levy of an attachment and one secured by the docketing of a judgment, or the levy of an execution, except that it may be defeated by dissolution of the attachment, or failure to obtain judgment. There is no reason to suppose from the language, either of the constitution or of the statute, that it was intended to give to the debtor the power, by his own acts, to deprive others of rights previously obtained in his property. They could be deprived of such rights only by due process of law. *Tuttle* v. *Howe*, 14 Minn. 145.

Judgment affirmed.